TOM JAMISON *v.* UNITED STATES

**No. 8110.**—
Entry No. 560, etc.

(Decided April 28, 1952)

*Philip Stein* (*Philip Stein* and *Marjorie M. Shostak* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

JOHNSON, Judge: These appeals for reappraisement, listed in schedule "A," hereto attached and made a part hereof, involve leather riding saddles imported from Magdalena, Sonora, Mexico, into the port of Nogales, Ariz. The controversy over the value is limited to saddles having a smooth-stamped design as a decoration which were invoiced at 190 pesos each, entered at the same price plus Mexican sales tax, but appraised at 214 pesos each. The advance in price of 24 pesos each involves solely the question of what constitutes a usual wholesale quantity in the ordinary course of trade.

At the trial the importer, the exporting manufacturer, and the broker who entered the merchandise testified on behalf of the plaintiff. There was admitted in evidence collective exhibit 1, a contract which was entered into between the importer and the Mexican manufacturer, and also on behalf of the Government, collective exhibit 2, a report of a customs agent who conducted an investigation into the value of the merchandise. Said report also contained a translation of the contract between the parties (collective exhibit 1) which was agreed to be a correct translation thereof.

The evidence discloses that the plaintiff entered into an agreement to purchase the saddles in question during the years 1944, 1945, and 1946 at a price of 190 pesos each, delivered to the plaintiff at the manufacturer's place of business. Deliveries were to be made of 50 saddles a month or 25 every 2 weeks. The evidence also discloses that the manufacturer had made a purchase of these saddles from another manufacturer in Hermisillo, which was approximately 90 miles from Magdalena, at a price of 180 pesos each delivered to him at Magdalena. All of the witnesses were in agreement that the usual wholesale quantity of saddles is 10 or more and that when smaller amounts are sold such sales are retail sales. All of these saddle manufacturers, including the manufacturer of the saddles in question, have little shops where leather goods are sold over the counter at retail to tourists and other retail customers. The plaintiff testified that it would not pay him to purchase less than 10 saddles on account of the transportation charges to the United States. It appears that the saddles in question were picked up by plaintiff's agent in Magdalena at the manufacturer's shop without any packing and delivered by truck to the plaintiff in the United States, the plaintiff paying the transportation and whatever other charges there were in connection with the exportation of the saddles from Mexico.

The investigation of the customs agent, according to his report, collective exhibit 2, is in agreement with the evidence introduced by the plaintiff. There is nothing to show that the usual wholesale quantity at which these leather saddles were freely offered for sale was less than 10, except a sale made by the manufacturer of the saddles herein to Carrasco Brothers, wholesale dealer in Nogales, Sonora, Mexico, of 6 saddles at a price of 214 pesos each, which was the appraised price, and apparently the basis of the appraised value herein. The manufacturer of the saddles in question, however, testified that Nogales was 55 miles from Magdalena, and that those saddles were sold at a delivered price to Nogales, and the price of 214 pesos was not the price delivered at his shop in Magdalena. The principal market was stated in the report to be Magdalena.

The manufacturer testified that the price he agreed to sell the saddles to Jamison, the plaintiff herein, was the price at which he freely offered to sell such saddles to anyone who would purchase in quantities of 10 or more and that he would not grant any concession for greater quantities, and had not done so in the case of Jamison. He testified that he would sell to any dealer at a price of 190 pesos each if the saddles were purchased in wholesale lots, but if less than 10 saddles were purchased, the price would be a little higher. The manufacturer's testimony was exactly the same as the information reported by the customs agent in his report.

From a careful consideration of the evidence, I am of the opinion that it overwhelmingly supports the plaintiff's contention that the foreign value of the saddles in question, at the time of exportation thereof to the United States, is 190 pesos each, that the export value thereof is no higher, and that said saddles were freely offered for sale for home consumption to all purchasers in the principal market of Magdalena, Sonora, Mexico, in the usual wholesale quantities and in the ordinary course of trade at such value.

Upon the record as a whole, I find as facts:

1. That the merchandise in question consists of hand-stamped leather saddles imported into the United States during the years 1944, 1945, and 1946.

2. That the saddles were purchased at the factory in Magdalena, Sonora, Mexico.

3. That the saddles were delivered to the importer at said factory without packing.

4. That Magdalena, Sonora, Mexico, was one of the principal markets wherein such saddles were freely offered for sale to all purchasers.

5. That at the time of exportation of the saddles in question the usual wholesale quantities in which the merchandise was freely offered for sale for home consumption in the ordinary course of trade to all purchasers, in said principal market, were in lots of 10 or more.

6. That the price of such saddles in such wholesale lots, as described in finding 5, was 190 pesos each, not including sales tax.

7. That there was no higher price at which the saddles were offered for sale or sold for exportation to the United States.

I therefore conclude as matters of law:

1. That the foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by section 8 of the Customs Administrative Act of 1938, is the proper basis of value for the merchandise in question.

2. That such value of the saddles in question is as set forth in finding of fact 6, plus sales tax, which is the entered value thereof.

Judgment will be entered accordingly.